IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| | § | CASE NO. 26-30311-CGB |
| CATHOLIC DIOCESE OF EL PASO, | § § | CHAPTER 11 |
| DEBTOR[1] | § | |

### DIOCESE'S *EMERGENCY* AGREED MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING POSTPETITION USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION TO WESTSTAR BANK

TO THE HONORABLE CHRISTOPHER G. BRADLEY,
UNITED STATES BANKRUPTCY JUDGE:

The Catholic Diocese of El Paso (the "**Diocese**"), as debtor-in-possession, by and through undersigned counsel files this *Emergency Agreed Motion for Interim and Final Orders Authorizing Postpetition Use of Cash Collateral and Granting Adequate Protection to WestStar Bank* (the "**Cash Collateral Motion**" or "**Motion**") pursuant to sections 105, 361, 363, and 507 of Title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). The Diocese seeks entry of an interim order in the form attached as <u>Exhibit A</u> (the "**Interim Order**"), and, after a final hearing, the entry of a final order in the form attached as <u>Exhibit B</u> (the "**Final Order**"). In support of this Motion, the Diocese relies on the *Declaration of Bishop Mark J. Seitz Regarding the Diocese's History, Charitable Mission, and Purpose in Seeking Chapter 11 Relief* (the "**Seitz Declaration**") and the *Declaration of Gregory J. Watters in Support of First Day Motions* (the "**Watters Declaration**," together with the Seitz Declaration, the "**First Day Declarations**"), which are incorporated by reference, and show as follows:

---

[1] The Diocese's address is 499 St. Matthews Street, El Paso, TX 79907. The last four digits of the Diocese's federal tax identification number are 0751.

HB: 4915-1637-0575.7

# BANKRUPTCY RULE 4001(B) CONCISE STATEMENT

1. By this Motion, the Diocese requests entry of an Interim Order: (a) authorizing Diocese to use the Cash Collateral (defined below) in which WestStar Bank ("**WestStar**") has or asserts an interest, (b) authorizing Diocese to provide adequate protection to WestStar for any decrease in the value of its interest in Diocese's property resulting from the use, sale, or lease of Diocese's property, including the use of Cash Collateral, (c) waiving any applicable stay under the Bankruptcy Rules and providing for the immediate effectiveness of the Interim Order, and (d) scheduling a final hearing (the "**Final Hearing**") to consider entry of the Final Order granting the relief requested in the Motion on a final basis.

2. WestStar, represented by counsel James W. Brewer, has agreed to the relief contained herein.

3. In accordance with Bankruptcy Rule 4001(b)(1)(B), the material provisions of the proposed use of Cash Collateral are as follows[2]:

   a. Definition of Cash Collateral: For purposes herein, the term Cash Collateral shall mean: (i) Money Market account number ending in 6985 established by the Diocese with WestStar (the "**Pledged Account**") including all funds, monies and other assets in the Pledged Account, and (ii) all interest, increases, substitutions, replacements, additions, or dividends derived from the Pledged Account and its funds and assets.

   b. Parties with an Interest in Cash Collateral. WestStar asserts an interest in the Cash Collateral pursuant to the Loan Documents. *See* Interim Order, ¶ F.

   c. Purpose of Use of Cash Collateral. The Diocese seeks authority to use Cash Collateral, specifically the interest income generated in the Pledged Account, to pay WestStar its monthly interest-only payments on the Loan. Additionally, for so long as the Diocese is in compliance with this Order it is authorized to use WestStar's cash collateral for the actual and necessary expenses of operation of the Diocese's business in accordance with the Budget attached hereto as **Exhibit A-1** provided that the Diocese may exceed any line item in the budget by 20% and the budget in the aggregate by 15%. The Diocese agrees

---

[2] All Capitalized Terms not defined in this paragraph shall have the meanings ascribed to them later in the Cash Collateral Motion.

to use funds from the Pledged Account and interest generated therefrom for operating expenses only to the extent other funds or sources of cash are not available.

d. <u>Duration of Use of Cash Collateral</u>: With respect to the Interim Order, Diocese's authorization to use Cash Collateral shall terminate on the earlier of: (i) the date of default by the Diocese of any term of the Interim Order, or (ii) the date of the Final Hearing on the Cash Collateral Motion. All Cash Collateral received by the Diocese shall be deposited into a debtor-in-possession account with WestStar. With respect to the Final Order, Diocese's ability to use Cash Collateral shall end on the earliest of: (i) the effective date of a confirmed plan of reorganization in the chapter 11 case, (ii) the dismissal of the chapter 11 case, (iii) any material provision of the Orders having ceased to be valid or binding for any reason, (iv) the Diocese having attempted to modify the Orders without the prior written consent of WestStar, and (v) five (5) business days following receipt by the Diocese of a notice (a "**Notice of Default**") from WestStar Bank of Diocese's breach of (a) any term of the Orders or (b) any covenant in the Loan Documents relating to the servicing, preservation or maintenance of the Cash Collateral so long as WestStar Bank does not take any action in violation of the Orders that would prevent Diocese from satisfying such covenant or undertaking; provided, however, Diocese shall have the opportunity to cure any alleged breach or default within the five (5) business days following receipt of a Notice of Default from the WestStar Bank and, if such breach or default is cured by Diocese, Diocese's ability to use the Cash Collateral shall not terminate.

e. <u>Adequate Protection</u>. The Diocese proposes to provide WestStar with adequate protection as follows: (i) post-petition liens against the same type of property and to the same validity, extent, and priority, as existed in WestStar's favor on the Petition Date, including a post-petition lien on all income, proceeds, interest, and other property acquired or generated on the Collateral by the Diocese and its bankruptcy estate from and after the Petition Date; (ii) regular interest-only monthly payments on the Loan, due on the 4th day of each month following the Petition Date, with the Diocese utilizing Cash Collateral to satisfy these adequate protection payments; (iii) continuing financial reporting to WestStar as required by the Loan Documents; and (iv) the retention of all of WestStar's rights, remedies, claims, and defenses under the Loan Documents, the Bankruptcy Code, or applicable non-bankruptcy law, including the right to move for relief from the automatic stay, to seek a modification of the Orders, or to seek conversion or dismissal of the case.

f. <u>Other Accounts</u>. The Diocese has established various other checking, savings and depository accounts in addition to the Pledged Account. WestStar holds contractual setoff rights against all funds in such other accounts. WestStar reserves all rights with respect to such other accounts including the right to assert such other accounts and funds therein are additional cash collateral.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The bases for the relief requested herein are sections 105, 361, 363, and 507 of the Bankruptcy Code and Bankruptcy Rules 4001 and 6004.

## Background

7. On March 6, 2026 (the "**Petition Date**"), the Diocese filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Diocese continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

8. No Committee or Examiner has been appointed.

9. With the filing of the petition, the Diocese filed the First Day Declarations. Please refer to the First Day Declarations for a summary of the Diocese in the above-referenced Chapter 11 case, including an overview of the Diocese's history, mission, ministries, financial position, the circumstances giving rise to the commencement of the Chapter 11 case, and an overview of the relief requested in the first day pleadings.

10. Prior to the Petition Date, on or around November 4, 2025, the Diocese became indebted to WestStar pursuant to a term loan (the "**Loan**") evidenced by a Promissory Note dated November 4, 2025. To secure the loan, WestStar holds a valid and perfected lien on the following account including proceeds, increases, substitutions, and benefits (collectively, the "**Collateral**"):

- Money Market account number ending in 6985 established by Debtor with WestStar (the "**Pledged Account**") including all funds, monies and other assets in the Pledged Account, and
- All interest, increases, substitutions, replacements, additions, or dividends derived from the Pledged Account and its funds and assets.

HB: 4915-1637-0575.7

By this Motion, the Diocese seeks approval to use Cash Collateral in the ordinary course of business, specifically to satisfy accruing interest owed to WestStar on its secured debt, thereby preserving the value of the collateral and ensuring the Diocese's continued ability to service its secured obligations.

## NEED FOR CASH COLLATERAL

11. The Diocese requests interim and final authority for the post-petition use of Cash Collateral, as requested herein, to utilize interest payments generated by the Pledged Account to satisfy accruing interest on the Diocese's primary secured debt to WestStar and, to the extent other funds or sources of cash are not available, to fund its general operating expenses. WestStar will be adequately protected by the retention of its lien and rights of set off and the Diocese's regular application of these interest payments to the outstanding interest obligation, thereby minimizing any risk of diminution in the value of the pre-petition collateral.

## BASIS FOR RELIEF

**A.  The Use of Cash Collateral is Warranted and Should be Approved.**

12. Section 363 of the Bankruptcy Code governs the ability of the Diocese to use property of the estate, including the Cash Collateral. Section 363 provides general authority to the Diocese to use property of the Diocese's estate in the ordinary course of business:

> If the business of the Diocese is authorized to be operated under section … 1108 … and unless the court orders otherwise, the [Diocese] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

13. Section 363(c)(2) of the Bankruptcy Code further provides, however, that a Diocese may not use cash collateral unless "(A) each entity that has an interest in such cash collateral

consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

14. The use of cash collateral may be prohibited or conditioned, upon proper request "of an entity that has an interest in property," as necessary to adequately protect any interest in cash collateral. *See* 11 U.S.C. § 363(e).

15. The Bankruptcy Code does not define the nature or extent of the "interest in property" of which a secured creditor is entitled to adequate protection under section 361 of the Bankruptcy Code. However, the plain language of the Bankruptcy Code indicates that a qualifying interest demands protection only to the extent that the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363.

16. A secured creditor is entitled to "adequate protection" only against diminution in the value of the collateral securing the creditor's allowed secured claim. *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988). Accordingly, where the "value of the collateral" is not diminishing by its use, sale, or lease, the creditor's interest is adequately protected.

17. Here, WestStar will be adequately protected. As adequate protection for the Diocese's use of cash collateral, WestStar will be granted post-petition liens against the same type of property and to the same validity, extent, and priority, as existed in WestStar's favor on the Petition Date, including a post-petition lien on all income, proceeds, interest, and other property acquired or generated on the Cash Collateral by the Diocese and its bankruptcy estate from and after the Petition Date. As additional adequate protection the Diocese will pay to WestStar interest only monthly payments on the Loan due on the 4th day of each month following the Petition Date.

The Diocese will also continue to provide all financial reporting to WestStar as required by WestStar's loan documents.

18. Further, the Diocese's use of Cash Collateral is further constrained by the Budget, which provides projected disbursements and receipts on a monthly basis for three months. The Diocese shall not permit a total operating disbursement variance for any month to have a negative variance in excess of 15%; provided, further, that the Diocese may exceed any line item in the Budget by 20%.

19. The Diocese believes that, in its business judgment, the ability to use interest payments from the Pledged Account both to service accruing interest on its secured debt and, as needed but only to the extent other funds or sources of cash are not available, to fund essential operations, is critical to preserving the value of the estate and maximizing the likelihood of a successful reorganization.

20. Accordingly, the Diocese submits that the proposed adequate protection structure is fair and reasonable and fully compensates WestStar for any potential diminution in value of its collateral.

21. WestStar has provided the Diocese with consent to the relief requested herein.

### Request for Final Hearing

22. Pursuant to Bankruptcy Rule 4001(b)(2), the Diocese requests that the Court set a date for the Final hearing within thirty (30) days after entry of the Interim Order and fix the time and date prior to the final hearing for parties to file objections to this Motion.

23. The Diocese respectfully requests that, pending the hearing on a Final Order, the Interim Order be approved in all respects and that the terms and provisions of the Interim Order be implemented and deemed binding and that, after the Final Hearing, the Final Order be approved

in all respects and the terms and provisions of the Final Order be implemented and be deemed binding.

## Notice

23. The Diocese will provide notice of this Motion to (i) the Office of the United States Trustee for Region 7; (ii) the attorneys for the Committee once the committee has been appointed, and until then, (a) the Plaintiffs in abuse lawsuits against the Diocese through their counsel and (b) the Diocese's twenty (20) largest unsecured trade creditors; (iii) those persons who have formally appeared by filing a Notice of Appearance, a Request for Notice, or a similar document and requested notice in this case under Bankruptcy Rule 2002; (iv) the Texas Attorney General's Office; (v) Weststar Bank through its counsel; (vi) the ad hoc group of abuse survivors through its counsel, Drew J. Glasnovich; and (vii) to the extent applicable, known counsel to the foregoing. A copy of this Motion and any orders approving it will also be made available on the Diocese's Case Information Website located at https://cases.stretto.com/dioceseofelpaso.

## No Prior Request

24. No prior motion for the relief requested has been made to this or any other court.

## CONCLUSION

**WHEREFORE**, the Diocese respectfully requests (a) entry of an order substantially in the form of the proposed Interim Order attached hereto as Exhibit A pursuant to the Budget set forth in **Exhibit A-1** (b) after a final hearing on the relief requested herein, entry of a Final Order approving the proposed use of Cash Collateral, in substantially the same form of the proposed Final Order attached hereto as Exhibit B, and (c) such other relief as the Court deems appropriate under the circumstances.

Dated: March 6, 2026         Respectfully submitted,

**HUSCH BLACKWELL LLP**

*/s/ Lynn Hamilton Butler*
Lynn Hamilton Butler (SBN 03527350)
Email: lynn.butler@huschblackwell.com
Tara T. LeDay (SBN 24106701)
Email: tara.leday@huschblackwell.com
Jennifer Pollan (SBN 24150828)
Email: jennifer.pollan@huschblackwell.com
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Main No. (512) 472-5456
Fax No.  (512) 479-1101

-and-

**HUSCH BLACKWELL LLP**
Francis H. LoCoco, Esq. (TBN 24122830)
Email: frank.lococo@huschblackwell.com
511 North Broadway, Suite 1100
Milwaukee, WI 53202
Telephone     (414) 273-2100
Facsimile     (414) 223-5000

**PROPOSED ATTORNEYS FOR THE DEBTOR AND DEBTOR IN POSSESSION, CATHOLIC DIOCESE OF EL PASO**

**CERTIFICATE OF CONFERENCE**

On March 3, 2026, I conferred with James W. Brewer counsel for WestStar Bank, who confirmed he is in agreement with the relief requested in this Motion.

*/s/ Lynn Hamilton Butler*
Lynn Hamilton Butler

9

HB: 4915-1637-0575.7

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 6, 2026, a true and correct copy of the forgoing document, together with all exhibits and attachments hereto, was filed with the Court and served to the parties below via the method indicated.

/s/ *Lynn Hamilton Butler*
Lynn Hamilton Butler

**Secured Creditor**
WestStar Bank
c/o James Brewer
KEMP SMITH LAW
221 N. Kansas, Suite 1700
El Paso TX 79901
*Via Email:  jim.brewer@kempsmith.com*

**Ad Hoc Committee**
c/o Drew J. Glasnovich
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis MN 55402
*Via Email:  drew.glasnovich@stinson.com*

**U.S. Trustee**
Aubrey Thomas
Assistant United States Trustee
UNITED STATES TRUSTEE-REGION 7
615 E. Houston Street, Suite 533
San Antonio TX 78205
*Via Fax:  210-472-4649*

**Texas Attorney General**
Texas Office of the Attorney General
Bankruptcy & Collections Division
P.O. Box 12548
Austin TX 78711-2548
*Via U.S. Mail*

**Top 20 Unsecured Creditors**

**GALLAGHER BASSETT SERVICES, INC.**
Attn: Steve Puteki
15763 Collections Center Drive
Chicago IL 60693
*Via Email:  GB-AR-Mail@gbtpa.com*

**Gilberto Morales**
c/o David M. Driscoll
AINSA HUTSON LLP
5809 Acacia Circle
El Paso TX 79912-4859
*Via Email:  info@ahhclawyers.com*

**Isaac Melendrez**
c/o Margie A. Rutledge
Carey Bhalla
Carolyn M. Nichols
Roshanna K. Toya
ROTHSTEIN DONATELLI LLP
500 4th Street, N.W., Suite 400
Albuquerque NM 87102
*Via Emal:  mrutledge@rothsteinlaw.com*
*Via Email:  cbhalla@rothsteinlaw.com*
*Via Email:  cnichols@rothsteinlaw.com*
*Via Email:  rtoya@rothsteinlaw.com*

**John Doe "203"; Jane Doe "204";**
**John Doe "206"; Jane Doe 208;**
**John Doe 209; John Doe 211;**
**John Doe 212; Jane Doe 214**
c/o Levi A. Monagle
Shayne C. Huffman
Jason T. Wallace
HUFFMAN WALLACE & MONAGLE LLC
122 Wellesley Dr. SE
Albuquerque NM 87106
*Via Email: office@hmhw.law*

-and-

HB: 4915-1637-0575.7

c/o Ben Davis
Zackeree Kelin
Ellen Geske
DAVIS KELIN LAW FIRM, LLC
127 Bryn Mawr Drive, SE
Albuquerque NM 87106
*Via Email: bdavis@daviskelin.com*
*Via Email: zkelin@daviskelin.com*
*Via Email: egeske@daviskelin.com*

**Jane Doe 1; Jane Doe 2; Jane Doe 3; Jane Doe 4; Jane Doe 5**
c/o Taylor E. Smith
Carolyn M. "Cammie" Nichols
ROTHSTEIN DONATELLI LLP
500 4th Street, N.W., Suite 400
Albuquerque NM 87102
*Via Email: tsmith@rothsteinlaw.com*
*Via Email: cmnichols@rothsteinlaw.com*

-and-

c/o Sam Fadduol
Christopher P. Winters
FADDUOL, CLUFF, HARDY & CONAWAY, P.C.
3301 San Mateo Boulevard NE
Albuquerque NM 87107
*Via Email: sfadduol@fchclaw.com*
*Via Email: cwinters@fchclaw.com*

-and-

c/o Paul Linnenburger
Lane + Linnenburger + Lane LLP
P O Box 6622
Albuquerque NM 87197
*Via Email: paul@attorneyslane.com*

**John Doe 1; John Doe 2; Leigh Messerer as Personal Representative of John Doe 3**
c/o Taylor E. Smith
Carolyn M. "Cammie" Nichols
Carey Bhalla
Roshanna K. Toya
ROTHSTEIN DONATELLI LLP
500 4th Street, N.W., Suite 400
Albuquerque NM 87102
*Via Email: tsmith@rothsteinlaw.com*
*Via Email: cmnichols@rothsteinlaw.com*
*Via Email: cbhalla@rothsteinlaw.com*
*Via Email: rtoya@rothsteinlaw.com*

**John Doe 210;**
c/o Levi A. Monagle
Shayne C. Huffman
Jason T. Wallace
HUFFMAN WALLACE & MONAGLE LLC
122 Wellesley Dr. SE
Albuquerque NM 87106
*Via Email: office@hmhw.law*

HB: 4915-1637-0575.7